IN RE: ANNEXATION ORDINANCE #D-21927 ADOPTED BY CITY OF WINSTON-SALEM, N. C., DECEMBER 17, 1979—AREA I

IN RE: ANNEXATION ORDINANCE #D-21927 ADOPTED BY CITY OF WINSTON-SALEM, N. C., DECEMBER 17, 1979—AREA II

IN RE: ANNEXATION ORDINANCE #D-21927 ADOPTED BY CITY OF WINSTON-SALEM, N. C., DECEMBER 17, 1979—AREA 6-A

IN RE: ANNEXATION ORDINANCE #D-21927 ADOPTED BY CITY OF WINSTON-SALEM, N. C., DECEMBER 17, 1979—AREA 6-B-1

IN RE: ANNEXATION ORDINANCE #D-21927 ADOPTED BY CITY OF WINSTON-SALEM, N. C., DECEMBER 17, 1979—AREA 8

No. 47

(Filed 2 June 1981)

1. **Municipal Corporations § 2— annexation statutes—no unconstitutional delegation of authority**

Statutes governing annexation by municipalities having a population of 5,000 or more, G.S. 160A-45 *et seq.*, do not unconstitutionally delegate authority to the governing boards of the municipalities without adequate standards and guidelines because (1) there is no definition of the terms "major trunk water mains and sewer outfall lines" and (2) the statutes require that the annexation report set forth plans for providing municipal services to the areas to be annexed on the date of annexation on "substantially" the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.

2. **Municipal Corporations § 2— annexation without consent—due process and equal protection**

Annexation without a vote of the residents in the areas to be annexed does not violate due process and equal protection rights of such residents.

In re Annexation Ordinance

**3. Municipal Corporations § 2.6— maintenance of unpaved streets in area to be annexed**

There is no merit to petitioners' contention that their rights to due process and equal protection are violated on the ground that they have no adequate remedy at law because their time for appealing any failure by the city to provide city services will have expired before the time the annexation plans call for the city to begin paving unpaved streets since the annexation statutes do not require that the unpaved streets in the area to be annexed be paved, and there is nothing in the record to indicate that the unpaved streets will not be paved in the same manner and on a comparable schedule as those unpaved streets existing within the corporate limits of the city prior to annexation; furthermore, petitioners in fact have an adequate remedy at law since the annexation plan and the provision for services thereunder, when approved by the court, become a court-ordered plan, and any failure to comply therewith can be remedied by the court. G.S. 160A-50(h).

**4. Constitutional Law § 23.3; Municipal Corporations § 2— annexation statutes— taxation without vote**

Annexation statutes are not unconstitutional because they subject the property annexed to taxation when the property owners do not have the right to vote on the members of the annexing city's governing board which adopts the annexation ordinance.

**5. Constitutional Law § 24.9; Municipal Corporations § 2— annexation statutes— superior court review without jury**

Annexation statutes are not unconstitutional because they provide that the review by the superior court is without a jury.

**6. Municipal Corporations § 2— annexation statutes—statement of policy—test of reasonableness**

The statement of State policy with regard to annexation set forth in G.S. 160A-45 is not part of the "procedure" of annexation under G.S. 160A-50(a) and G.S. 160A-50(f)(1), and there is no test of "reasonableness" which must be considered upon judicial review of an annexation proceeding.

**7. Municipal Corporations § 2.6— extension of services to annexed territory**

The evidence supported the trial court's determination that a city's plans for the extension of police protection, fire protection, water and sewer services, street maintenance and recreational services to an area to be annexed provided for furnishing such services on substantially the same basis and in the same manner as such services were provided within the corporate limits of the city prior to annexation. G.S. 160A-47(3)(a).

**8. Municipal Corporations § 2.1— annexation ordinance—reliance on studies by staffs of city departments**

An annexation ordinance was not invalid because the city governing board and several city department heads relied upon studies, investigations, reports, and accountings conducted by the staffs of the various city departments.

**9. Municipal Corporations § 2.4— appeal of annexation ordinance—burden of proof**

      The burden was on the petitioners, who appealed from an annexation ordinance, to show by competent evidence that the city in fact failed to meet the statutory requirements or that there was irregularity in the proceedings which materially prejudiced their substantive rights.

**10. Municipal Corporations § 2.5— effective date of annexation**

      · Where annexation ordinances were the subject of an appeal to the Supreme Court on the effective date of the ordinances, the effective date of the ordinances was postponed until the final judgment of the Supreme Court is · certified to the clerk of superior court. G.S. 160A-50(i).

APPEAL by petitioners pursuant to G.S. 160A-50(h) from a judgment by *Lamm, J.*, declaring the annexation ordinances in question valid, entered on 6 June 1980 out of term and out of county by stipulation of the parties. The matter was heard without a jury at the 19 May 1980 Civil Session of Superior Court, FORSYTH County.

The genesis of this appeal is an ordinance of the Board of Aldermen of the City of Winston-Salem annexing to the City of Winston-Salem five (5) areas containing a total of 4.9 square miles of land having 8,502 residents.[1]

It is stipulated in the record on appeal that in its annexation proceedings the City of Winston-Salem duly adopted the ordinance of annexation on 17 December 1979, that · all required notices were given, that public hearings required by statute were duly held, that all parties were properly before the court and that the court had jurisdiction of the parties and the subject matter.

In the early part of 1979 at the request of the city manager, the assistant city manager, Joe Berrier, requested that the planning department of the City of Winston-Salem prepare maps and population data for all urban areas eligible for annexation. Staff personnel analyzed the population characteristics of these areas and the city's ability to provide various city services to the areas.

---

1. For the sake of convenience we refer to the annexation ordinances as a single ordinance. Actually there are five separate ordinances, each corresponding to a separately numbered area. All five ordinances were adopted at the same meeting of the Board of Aldermen in consecutive order by numbered area. All five ordinances bear the same ordinance number (D-21927) and are the same in all respects except for the description of the territory annexed.

Costs of providing water and sewer services, police and fire protection and other city services were all considered by Mr. Berrier and various department and division heads. On 13 September 1979 Mr. Berrier sent a letter to all members of the Board of Aldermen requesting that they come by his office to review the maps and discuss proposed plans for annexation. Meetings of a special annexation committee of the city staff personnel were held in October, 1979, to discuss the costs of annexing certain areas. On 4 October 1979 maps of ten areas being considered for annexation, including the five areas eventually approved for annexation, were sent to the public works committee and the finance committee of the Board of Aldermen. On 8 and 9 October 1979, city staff members discussed with the public works and finance committees of the Board the preliminary cost estimates and a time schedule for annexation. All of the foregoing steps were taken prior to the Board of Aldermen's first formal consideration of the annexation, which occurred on 15 October 1979 when the Board adopted a resolution declaring its intent to annex and setting the date for the public hearing. On 12 November 1979, the Board of Aldermen held a duly-advertised special meeting and received and approved the annexation study report which proposed annexation of the five areas into the city. A public hearing was held on 3 December 1979 at which time interested persons were given an opportunity to be heard with respect to the proposed annexation. On 17 December 1979, the Board adopted the annexation ordinance in question.

Petitioners filed their petition in the Superior Court, Forsyth County in apt time in accordance with G.S. 160A-50. The city filed a response and forwarded documents to the court and served copies of the same on the petitioners.

Beginning 19 May 1980, Judge Lamm heard over six days of testimony from thirty witnesses, including the petitioners, the mayor, every member of the Winston-Salem Board of Aldermen and eleven city employees (including eight department or division heads). Judge Lamm made findings of fact and conclusions of law and entered his judgment on 6 June 1980, holding the City of Winston-Salem's annexation of the five areas valid and in conformity with the laws of North Carolina. From that judgment plaintiffs appealed.

*Doughton, Moore, and Newton, by Thomas W. Moore, Jr., George E. Doughton, Jr. and Richmond W. Rucker, attorneys for petitioner appellants.*

*Womble, Carlyle, Sandridge, and Rice, by Roddey M. Ligon, Jr.; and Ronald G. Seeber and Ralph D. Karpinos, attorneys for respondent appellee.*

MEYER, Justice.

As the City of Winston-Salem is a municipality having a population of more than five thousand according to the 1980 federal decennial census, annexation by the city is governed by Chapter 160A, Article 4A, Part 3, of the General Statutes. The guiding standards and requirements of that Act are set forth in great detail and the governing body must conform to the procedures and meet the requirements set forth in the Act as a condition precedent to the right to annex. *In re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795 (1961). *Prima facie* complete and substantial compliance with the applicable statutes is likewise a condition precedent to annexation. *In re Annexation Ordinance*, 296 N.C. 1, 249 S.E. 2d 698 (1978).

Petitioners are ten in number, being a husband and wife from each of the five annexed areas. They bring forward numerous assignments of error grouped under eight "Questions Presented." We set forth below *seriatim* the petitioners' contentions as to each question presented and our conclusion with respect thereto.

Questions I, II, III and IV challenge the constitutionality of the annexation statute and the city's annexation of the five areas pursuant thereto.

I

[1] Petitioners contend that the annexation statute (G.S. 160A-45, *et seq.*) is an unconstitutional delegation of authority to the governing boards of the municipalities without adequate standards and guidelines. Petitioners say that there is an unconstitutional delegation because (1) there is no definition of the terms "major trunk water mains and sewer outfall lines" and (2) the statute requires that the annexation report set forth plans for providing other municipal services such as police protection, fire protection, garbage collection and street maintenance services to

the areas to be annexed on the date of annexation on "substantially" the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.

The ordinary restrictions with respect to the delegation of power to a state agency which exercises no function of government do not apply to cities, towns or counties. The legislature has the right, unhampered by constitutional restrictions, to grant the power given in the annexation statute under consideration to municipalities having a population of five thousand or more since the power is incidental to municipal government in matters of purely local concern. *In re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795 (1961); *see Plemmer v. Matthewson*, 281 N.C. 722, 190 S.E. 2d 204 (1972); *Williams v. Town of Grifton*, 19 N.C. App. 462, 199 S.E. 2d 288 (1973).

G.S. 160A-47(3)(b) requires that the plans of the municipality include extension of "major trunk water mains and sewer outfall lines" into the area to be annexed so that when such lines are constructed, "property owners in the area to be annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions." The very wording of the statute establishes the standard or guideline for "major trunk water mains and sewer outfall lines" as being those which, when constructed, will allow public water and sewer service to be provided to individual lots and subdivisions in the annexed area in the same manner that such services are provided within the existing corporate limits. It is obvious that the characterization of the size of water mains and sewer outfall lines as "major" mains and lines depends largely upon the size of the municipality or even the number of users within a particular subdivision. Reason and common understanding dictate that the characterization of a main or line as a "major" main or line would not be the same for the town of Brevard with a population of 5,286 as it would be for the city of Charlotte with a population of 310,799 (1980 census figures). The legislature wisely selected terminology with sufficient flexibility to be applied in such diverse situations.

The use of the word "substantially" in G.S. 160A-47(3)(a) does not render the statute vague and ambiguous. Whether a city can provide services to the newly annexed areas "on substantially the

same basis" as those services are provided within the corporate limits of the municipality prior to annexation is usually the subject of much debate in controversies involving annexation. In the case before us Judge Lamm heard literally days of testimony on this very issue and concluded with respect to each major municipal service that such services could be provided by the City of Winston-Salem on substantially the same basis and in the same manner as such services were provided within the city prior to annexation. Pursuant to G.S. 160A-50(f), it is the role of the court to determine whether the provisions of G.S. 160A-47 were met. Pursuant to G.S. 160A-50(h), the appeal from the final judgment of the superior court is directly to the Supreme Court, which reviews the determination made by the trial judge as to whether there was "substantial" compliance with the statute. We find ample and convincing evidence in the record to support his conclusions in that regard.

The assignments of error grouped under petitioners' Question Presented I are without merit and are overruled.

## II

[2] The petitioners contend that their rights to due process and equal protection were violated because the residents of the annexed areas had no vote on the question of annexation.

It is well settled that annexation without the consent of the residents of the area being annexed does not conflict with the principles of due process. *Hunter v. Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907); *In re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795 (1961); *Lutterloh v. Fayetteville*, 149 N.C. 65, 62 S.E. 758 (1908); *Manly v. City of Raleigh*, 57 N.C. 370 (1859).

The courts have likewise upheld annexation without consent as not violative of the equal protection clause of the United States Constitution. *Clark v. Kansas City*, 176 U.S. 114, 20 S.Ct. 284, 44 L.Ed. 392 (1900); *Wilkerson v. City of Coralville*, 478 F. 2d 709 (8th Cir. 1973); *Garren v. City of Winston-Salem*, 463 F. 2d 54 (4th Cir.), *cert. denied*, 409 U.S. 1039 (1972); *Thompson v. Whitley*, 344 F. Supp. 480 (E.D.N.C. 1972). *See Rexham Corp. v. Town of Pineville*, 26 N.C. App. 349, 216 S.E. 2d 445 (1975); *see also* Annot., 64 A.L.R. 1335, 1364-65 (1929).

[3] Petitioners also contend that their constitutional rights to due process and equal protection are violated because they have no adequate remedy at law since their time for appealing any failure by the city to provide city services will have already expired before the time the annexation plans call for the city to begin paving unpaved streets. Pursuant to the annexation plan, the city does not plan to begin paving unpaved streets until 15 months after annexation, but all such unpaved streets are scheduled to be paved within approximately two years of the effective date of the annexation period. G.S. 160A-47(3)(a) requires that the plan provide for "street maintenance services" to the area to be annexed on substantially the same basis and in the same manner as services are provided within the rest of the municipality prior to annexation. Under the statute the city is obligated to maintain the streets in the annexed area, whether paved or unpaved, on substantially the same basis and in the same manner as within the city prior to annexation. Upon annexation the city becomes responsible for the maintenance of these unpaved streets, but the statute does not require that they be paved. The statute demands only that they be treated substantially on the same basis and in the same manner as the streets within the corporate limits prior to annexation. The paving program was included in the annexation plan. There is nothing in the record before us to indicate that the unpaved streets within the annexation area will not be paved in the same manner and on a comparable schedule as those unpaved streets existing within the corporate limits of the City of Winston-Salem prior to annexation. In any event, we believe that the petitioners in fact have an adequate remedy at law. When approved by the court, the annexation plan and the provision for services thereunder become a court-ordered plan and any failure to comply can be remedied by the court. G.S. 160A-50(h). We note that G.S. 160A-50(h), while an exclusive remedial provision insofar as it covers services which must be provided within the time period set forth in G.S. 160A-47(3), does not exclude from judicial review plans for paving or other municipal services consistent with policies of the city not required to be provided within one year. It is unnecessary for us to determine whether petitioners have standing to make this argument. We simply note that the city has not yet failed to provide any of the services for which the statute allows a writ of mandamus.

The assignments of error grouped under petitioners' Question Presented II are overruled.

## III

[4]  Petitioners contend that the annexation statute is unconstitutional because it subjects the property annexed to taxation when the property owners do not have the right to vote on the members of the city's governing board which adopts the annexation ordinance. This, they contend, constitutes taxation without representation and deprivation of property without due process of law. There is no merit in this assignment.

We held in *In re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795 (1961), that "the fact that the property of residents in the annexation area will thereby become subject to city taxes levied in the future, does not constitute a violation of the due process clause of the State and Federal Constitutions." *Id.* at 651-52, 117 S.E. 2d at 805.

The United States Supreme Court held in *Hunter v. Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), that involuntary annexation of an area into a municipality, even where the voters of the area to be annexed were entitled to vote and voted not to join, but were outvoted by the voters in the city, did not deprive those voters and residents of the annexation area their right to due process. This was so, the Court said, even though the property in the annexation area may be lessened in value by the burden of the increased taxation or because inhabitants of that area would suffer inconvenience for any other reason. *Id.* at 177-79, 28 S.Ct. at 46-47, 51 L.Ed. at 158-59.

The assignments of error grouped under petitioners' Question Presented III are overruled.

## IV

[5]  The petitioners contend that the annexation statute is unconstitutional because it provides that the review by the superior court is without a jury.

This Court said in *In re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795 (1961):

The procedure and requirements contained in the Act under consideration being solely a legislative matter, the

right of trial by jury is not guaranteed, and the fact that the General Assembly did not see fit to provide for trial by jury in cases arising under the Act, does not render the Act unconstitutional.

*Id.* at 649, 117 S.E. 2d at 804. *See also Moody v. Town of Carrboro*, 301 N.C. 318, 271 S.E. 2d 265 (1980); *In re Annexation Ordinance*, 284 N.C. 442, 202 S.E. 2d 143 (1974).

The assignments of error grouped under petitioners' Question Presented IV are overruled.

### V and VI

[6] Petitioners contend in their Questions Presented V and VI that the matters set forth in G.S. 160A-45 concerning the statement of state policy with regard to annexation should be treated as a part of the "procedure" under G.S. 160A-50(a) and G.S. 160A-50(f)(1). Thus, they contend, even if the court fails to treat the statements of state policy as a part of the "procedure" of annexation, there is nevertheless a separate test of "reasonableness" of the viability of an annexation proceeding which must be considered upon judicial review in order to protect the residents of a municipality and residents of the annexation area from an ill-conceived annexation by the governing body of the municipality.

In *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980), this Court held:

> [T]he provisions of G.S. 160A-45 are merely statements of policy. No procedural steps, substantive rights, or annexation requirements are contained in that statute. The policies enumerated there are aids for statutory interpretation when other sections of part 3 of Chapter 160A are in need of clarification, definition, and interpretation.

Id. at 189, 265 S.E. 2d at 191.

The superior court's review of the annexation ordinance of a municipal governing body is limited by statute. *Moody v. Town of Carrboro*, 301 N.C. 318, 271 S.E. 2d 265 (1980). Upon review the judge may examine the annexation proceedings to determine only whether the municipal governing board substantially complied with the requirements of the applicable annexation statutes. *Id.*; *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189

(1980); *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 265 S.E. 2d 123 (1980).

G.S. 160A-50(f) provides in effect that on judicial review the court may hear oral arguments, receive written briefs, and may take evidence intended to show:

(1) that the statutory procedure was not followed, or

(2) that the provisions of G.S. 160A-47 were not met, or

(3) that the provisions of G.S. 160A-48 have not been met. This section clearly specifies the inquiries to which the court is limited. *In re Annexation Ordinance*, 284 N.C. 442, 202 S.E. 2d 143 (1974).

This Court described the limitations of a court's review of an annexation ordinance in *In re Annexation Ordinance*, 278 N.C. 641, 180 S.E. 2d 851 (1971). There the Court said:

> Thus, the court's review is limited to these inquiries: (1) Did the municipality comply with the statutory procedures? (2) If not, will the petitioners "suffer material injury" by reason of the municipality's failure to comply? (3) Does the character of the area specified for annexation meet the requirement of G.S. 160-453.16 as applied to petitioners' property? G.S. 160-453.18(a) and (f).

*Id.* at 646-47, 180 S.E. 2d at 855.

We conclude that the provisions of G.S. 160A-45 are statements of policy and should not be treated as part of the procedure under G.S. 160A-50(a) and G.S. 160A-50(f)(1). Nor do we find a separate test of "reasonableness" within the limited scope of judicial review permitted in annexation cases.

The assignments of error grouped under petitioners' Questions Presented V and VI are overruled.

## VII

[7] In an annexation report the city must include a statement setting forth the plans of the municipality for extending certain enumerated municipal services to the area to be annexed on the date of annexation "on substantially the same basis and in the same manner as such services are provided within the rest of

the municipality prior to annexation." G.S. 160A-47(3)(a). In their Question Presented VII, petitioners contend that the trial court erred in concluding that the plan submitted by the City of Winston-Salem for extending police protection, fire protection, water and sewer service, street maintenance services and recreational services complied with the requirements of G.S. 160A-47(3)(a). On appeal, the findings made by the Court below are binding on this Court if supported by competent evidence, even though there is evidence to the contrary. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 123 (1980); *In re Annexation Ordinance*, 296 N.C. 1, 249 S.E. 2d 698 (1978).

The petitioners had the burden of showing by competent and substantial evidence a failure to meet statutory requirements or an irregularity in the proceedings which materially prejudiced their substantive rights. *Food Town Stores v. City of Salisbury*, 300 N.C. at 25, 265 S.E. 2d at 126; *Dunn v. City of Charlotte*, 284 N.C. 542, 201 S.E. 2d 873 (1974); *In re Annexation Ordinance*, 278 N.C. 641, 180 S.E. 2d 851 (1971); *Huntley v. Potter*, 255 N.C. 619, 122 S.E. 2d 681 (1961). Petitioners have failed to carry that burden. Even if there were slight irregularities in the report or procedures, which in fact the appellee denies, this would not invalidate the ordinance provided there has been substantial compliance with all essential provisions of the law. *In re Annexation Ordinance*, 278 N.C. at 648, 189 S.E. 2d at 856. It would serve only to clutter the pages of our reports if we undertook to summarize those portions of the over two hundred pages of recorded testimony of witnesses which support Judge Lamm's findings that the city's plans will provide the various city services to the annexed area in accordance with the standards and guidelines of the annexation statute. As to this contention, it is sufficient to say that we find ample competent evidence in the record to support the findings of the court below. Our comprehensive review of the annexation documents and proceedings compels the conclusion that the annexation of the five areas was accomplished in full compliance with the requirements of G.S. 160A-47(3)(a). The plans for the extension of police protection, fire protection, water and sewer services, street maintenance and recreational services to the annexed area provide for furnishing such services on substantially the same basis and in the same manner as such services are provided within the corporate limits of the City of Winston-Salem prior to annexation.

The assignments of error grouped under petitioners' Question Presented VII are overruled.

## VIII

[8] In their Question Presented VIII, petitioners contend that the annexation ordinance is invalid because the Board of Aldermen and several city department heads were guilty of "gross misuse of discretion and the abrogation of responsibility" in relying upon the staff of the various city departments to conduct studies, make investigations, produce reports, and do accountings upon which the department heads and Board members relied. We find no merit in this contention. We know of no statute or legal precedent which prohibits members of the governing bodies and department heads of municipalities from relying upon studies, investigations, reports, accountings, etc., conducted by city staff members. This is true whether such studies, reports, etc., were made at the specific request and authorization of the governing body or department head or in the ordinary course of municipal affairs.

Under the annexation statute, "the only discretion given to the governing boards of such municipalities is the permissive or discretionary right to use this new method of annexation provided such boards conform to the procedure and meet the requirements set out in the Act . . . ." *In re Annexation Ordinances*, 253 N.C. at 647, 117 S.E. 2d at 802. The record shows that the city staff made an extensive study and that all members of the Board of Aldermen had the opportunity to review those studies and the annexation maps, and to discuss with city staff all aspects of the proposed annexation; that the Board then received and approved the annexation study report on 12 November 1979, after two of its committees had discussed the costs and time schedule for annexation; and that the Board held a public hearing on the proposed annexation on 3 December 1979, at which time all interested persons spoke regarding the proposed annexation.

It certainly cannot be considered a mere shell or ritual of conformity when the governing body of a municipality, in good faith, obtains all the information required by the Act, with respect to the character of the area or areas to be annexed, the density of the resident population therein, the extreme boundaries thereof, and the percentage of such

boundaries which are adjacent or contiguous to the municipality's boundaries, which must be at least one-eighth; and further provides or makes provision to extend all the governmental services to the newly annexed area or areas, comparable to the services provided for the residents within the city prior to annexation of the new area or areas.

*In re Annexation Ordinances,* 253 N.C. at 647, 117 S.E. 2d at 802.

The assignments of error grouped under petitioners' Question Presented VIII are overruled.

CONCLUSION

[9] The burden was on the petitioners, who appealed from the annexation ordinance, to show by competent evidence that the city in fact failed to meet the statutory requirements or that there was irregularity in the proceedings which materially prejudiced their substantive rights. *Food Town Stores v. Salisbury,* 300 N.C. 21, 265 S.E. 2d 123 (1980); *In re Annexation Ordinance,* 278 N.C. 641, 189 S.E. 2d 851 (1971); *Huntley v. Potter,* 255 N.C. 619, 122 S.E. 2d 681 (1961). *See generally* G.S. 160A-50(f) and (g). The petitioners have failed to meet their burden.

To suggest, as the petitioners have done in their brief, that "inequality and injustice . . . is *inherent* in the concept of forced annexation" [emphasis added] is to ignore reality. Annexation does not bring the burden of taxation without accompanying benefits. Urban level city services of all kinds which come to an annexed area for the first time constitute very substantial benefits, particularly with regard to police and fire protection and water, sewer and garbage collection services.

It is common knowledge and experience that residents of areas adjacent to our cities and towns which are subject to annexation under the laws of our State enjoy a great many city services financed by city taxpayers without paying city property taxes themselves. Most of those outside residents work in the city, shop in the city, use all manner of office facilities in the city, use in-city health care facilities, park and recreational facilities and programs and while doing so use city streets, city law enforcement and fire protection services, city garbage and refuse collection services, city parking facilities and city water and sewer services. They also receive planning, zoning and inspection

services from the city. With the possible exception of parking fees, inspection fees, and in some instances fees for the use of recreational facilities and perhaps some other isolated costs, these outside residents pay nothing for these services financed by taxes paid by residents of our cities. Fairness dictates that there comes a time when these residents must join in bearing the costs of those services.

In some instances certain city services such as water and sewer services are furnished to residents of areas outside the city at rates higher than those paid by city residents. In such cases annexation automatically reduces these rates to the same rates paid by city residents.

Annexation brings forth a higher level of debate than perhaps any other activity of municipal government. By the imposition of stringent standards and guidelines and procedural safeguards, the legislature has attempted to ensure fairness in balancing the benefits of city services with the burden of paying for them.

[10] Finally, we address the question of the effective date of the annexation ordinances. All five of the annexation ordinances (all bearing the single ordinance number D-21927) were adopted on 17 December 1979, to become effective at 11:59 p.m. 30 June 1980. The petition was filed on 15 January 1980 which was within thirty (30) days after the passage of the ordinance as required by G.S. 160A-50(a). Judge Lamm's judgment upholding the annexation ordinances was filed on 6 June 1980. Also on 6 June 1980 Judge Lamm entered an order staying the effective date of the annexation ordinances as to all five areas, paragraph 1 of which provides in part that the effective date of the ordinances shall be stayed "until final adjudication by any and all appellate courts of this State and so long as any appeal or motion is still pending before any such court." Paragraph 2 of the same order provides: "That this order shall remain in effect as set forth in paragraph 1 or until this order is dissolved by a Court of higher authority." Petitioners gave notice of appeal and their Appeal Entries were also filed on 6 June 1980. Therefore, the area annexed was the subject of an appeal to the superior or Supreme Court on the effective date of the ordinances. Pursuant to G.S. 160A-50(i), the effective date of the annexation ordinances in question is the date on which

the final judgment of this Court is certified to the Clerk of Superior Court, Forsyth County. *See Moody v. Town of Carrboro*, 301 N.C. 318, 271 S.E. 2d 265 (1980).

For the reasons stated, the judgment of the superior court upholding the annexation is

Affirmed.