HENRY H. COCKRELL, JR., A. THOMAS OLLS, BRENDA OLLS, DANNY TAI, MARSHA TAI, GROVER COBB, JAMES METZGER, LOULIE METZGER, HAL BARNES, EARLEEN BARNES, ALAN BEAVERS, LINDY BEAVERS, HAROLD PENLEY, MARTHA PENLEY, RICHARD BRIGHT, BILLIE BRIGHT, THOMAS MITCHELL, ANN MITCHELL, WAYNE WHISTLER, PAM WHISTLER, ROGER BAKER, CONNIE BAKER, ALBERT LA VALLA, LORRAINE LA VALLA, PETITIONERS v. CITY OF RALEIGH, NORTH CAROLINA, G. SMEDES YORK, MAYOR, AVERY C. UPCHURCH, JAMES B. WOMBLE, S. TONY JORDAN, JR., EDWARD A. WALTERS, REV. ARTHUR J. CALLOWAY, MIRIAM P. BLOCK, AND JOHN A. EDWARDS, CITY COUNCIL MEMBERS, RESPONDENTS

No. 141A81

(Filed 3 August 1982)

1. **Municipal Corporations § 2.1— annexation proceeding—failure to include plans to extend bus service and cable television service—not included in G.S. 160A-47(3)—no error**

G.S. § 160A-47(3) requires municipalities to include in their annexation reports plans to extend into the area proposed to be annexed only those municipal services specifically enumerated in the statute: police protection, fire protection, garbage collection, street maintenance, major trunk water mains, and sewer outfall lines. Therefore, the trial judge did not err in failing to allow petitioners to show that the Annexation Report and Annexation Ordinance were defective by reason of their failure to include plans for the extension of

transit service and CATV service into an area proposed for annexation. The fact that G.S. § 160A-47(3) does not require the two services excluded to be mentioned in the Annexation Ordinance, not the fact that they were provided by a franchise agreement or by an independent authority, provided the reason that it was not necessary to include the services in the Annexation Report since if a municipal service is one enumerated in G.S. § 160A-47(3), it must be included in the Annexation Report even though it is provided by an independent authority or under a franchise agreement.

2. **Municipal Corporations § 2.6— annexation proceeding—failure of city to comply with own policy for extending water service—no invalidation of annexation**

The failure of the City of Raleigh to comply with its own policy for extending water service when it connected its water system with a private water system in the area to be annexed in 1967 or when it acquired ownership of the system in 1977 did not invalidate the annexation since the violation cannot be undone and, to accept petitioners' position, would leave the subdivision forever immune from annexation no matter how intensely it developed.

Justice MARTIN took no part in the consideration or decision of this case.

APPEAL by petitioners pursuant to G.S. § 160A-50(h)[1] from a judgment by *Godwin, J.* filed 19 June 1981 declaring the annexation ordinance in question valid. The matter was heard without a jury at the 15 June 1981 Civil Session of Superior Court, WAKE County.

On 20 March 1980 the Raleigh City Council adopted a Resolution of Intent to consider annexation of the area known as "Brookhaven—Pickwick Village." A public hearing was held pursuant to proper notice, and thereafter on 20 May 1980 the City Council enacted Ordinance No. 1980-369, effective 30 June 1980, annexing the subject area. Prior to the adoption of the annexation ordinance, the City prepared an Annexation Report outlining its plans for extending municipal services to the area.

Petitioners are twenty-four residents of and owners of property within the area known as "Brookhaven" which is included within the territory annexed by Ordinance No. 1980-369. Pursuant to G.S. § 160A-50 petitioners, in apt time, filed a petition alleging that they would suffer material injury by reason of the City's failure in numerous respects to comply with the procedure and requirements of the annexation statutes in Part 3, Article 4A of

---

1. At all times pertinent to this appeal, appeals pursuant to G.S. § 160A-50(h) were directly to this Court. Effective 1 July 1981 such appeals are now heard by the Court of Appeals. 1981 N.C. Sess. Laws, ch. 682, s. 20.

Chapter 160A (1976 & 1981 Cum. Supp.). Among the allegations of the petition is the following:

> 11. The Annexation Report and Annexation Ordinance are defective in that they fail to set forth the plans of the City for extending to the area to be annexed every major municipal service performed by the City within the City limits at the time of annexation.

The petitioners sought to have the court declare the annexation ordinance null and void and remand the ordinance and report to the Raleigh City Council for further proceedings to correct the alleged defects. The City filed a reply denying the material allegations of the petition relating to the alleged defects in the annexation procedure and the annexation report.

A pretrial conference was held 12 June 1981 and the parties stipulated in effect (1) that the City had complied with the statutory procedures for annexation set out in G.S. § 160A-49, and (2) that the area proposed for annexation met the standards for urban development set out in G.S. § 160A-48. The sole question for hearing by the trial court was whether the City had satisfied the municipal service requirements set out in G.S. § 160A-47.

The case came on for trial on 17 June 1981. The petitioners presented evidence which tended to show that the City had violated its own utility extension policy in 1967, some thirteen years prior to the annexation, by extending water service to Brookhaven without requiring the developer to install a sewer system—a violation which the petitioners contend now made the City's compliance with G.S. § 160A-47(3)b impossible. They also attempted to present evidence that the City had failed to include in its Annexation Report and Annexation Ordinance plans for extending bus service and community antenna television service (CATV) to the area proposed for annexation.

From a judgment affirming the annexation, petitioners appealed. The trial judge issued an order continuing the stay of the effective date of the annexation ordinance until the appeal is resolved.

*Jordan, Brown, Price & Wall, by R. Frank Gray, attorney for Petitioner-Appellants.*

*Thomas A. McCormick, Jr., City Attorney for Respondent-Appellees.*

MEYER, Justice.

I

[1] The primary question presented for review is whether in a municipal annexation proceeding the City is required to include in its annexation report plans for extending into the proposed annexation area municipal services other than those enumerated in G.S. § 160A-47(3). For the reasons stated herein we hold that it is not and affirm the judgment of the trial court.

At the trial of this case the petitioners attempted to present evidence that the Annexation Report and Annexation Ordinance were defective by reason of their failure to include plans to extend bus service and cable television service to the area proposed for annexation. The petitioners intended to demonstrate that these services were "major municipal services" within the meaning of G.S. § 160A-47(3). The trial court, however, did not allow any of this evidence to be presented. In Conclusion of Law No. 6 in the Judgment and Order, the trial judge concluded as follows:

> Petitioners are not entitled to raise the issue of whether or not transit service and CATV service are 'major' municipal services required to be addressed in the Annexation Report, because the Petitioners did not raise those issues explicitly as required by G.S. 160A-50 or amend their petition and the general allegation of Paragraph 11 of the Petition will not suffice to allow a challenge to the annexation on those grounds.

While we agree with the conclusion that the petitioners were not entitled to introduce evidence of the City's failure to include plans for extending bus service and cable television service in the annexation report, we do so for a different reason than that expressed by the trial judge.

G.S. 160A-47(3) requires a municipality's annexation report to contain:

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

a. Provide for extending police protection, fire protection, garbage collection and street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. If a water distribution system is not available in the area to be annexed, the plans must call for reasonably effective fire protection services until such time as waterlines are made available in such area under existing municipal policies for the extension of waterlines.

b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed so that when such lines are constructed, property owners in the area to be annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions.

c. If extension of major trunk water mains and sewer outfall lines into the area to be annexed is necessary, set forth a proposed timetable for construction of such mains and outfalls as soon as possible following the effective date of annexation. In any event, the plans shall call for contracts to be let and construction to begin within 12 months following the effective date of annexation.

d. Set forth the method under which the municipality plans to finance extension of services into the area to be annexed.

The burden is on petitioners to establish by competent and substantial evidence the City's noncompliance with G.S. § 160A-47 (3). *See In re Annexation Ordinance,* 303 N.C. 220, 278 S.E. 2d 224 (1981); *Huntley v. Potter,* 255 N.C. 619, 122 S.E. 2d 681 (1961).

The central purpose behind our annexation procedure is to assure that, in return for the added financial burden of municipal taxation, the residents receive the benefits of all the *major* services available to municipal residents. *See* 2 E. McQuillan, The Law of Municipal Corporation, § 7.46 (3d ed., 1979 rev.). *See also Moody v. Town of Carrboro*, 301 N.C. 318, 271 S.E. 2d 265 (1980). The minimum requirements of the statute are that the City provide information which is necessary to allow the public and the courts to determine whether the municipality has committed itself to provide a nondiscriminatory level of service and to allow a reviewing court to determine after the fact whether the municipality has timely provided such services. If such services are not provided, the residents of the annexed area would be entitled to a Writ of Mandamus requiring the municipality to live up to its commitments. G.S. 160A-49(h); *Safrit v. Costlow*, 270 N.C. 680, 155 S.E. 2d 252 (1967).

. . . . We believe that the report need contain only the following: (1) information on the level of services then available in the City, (2) a commitment by the City to provide this same level of services in the annexed area within the statutory period, and (3) the method by which the City will finance the extension of these services. *See Moody v. Town of Carrboro*, 301 N.C. 318, 271 S.E. 2d 265 (1980). With this minimal information, both the City Council and the public can make an informed decision of the costs and benefits of the proposed annexation, a reviewing court can determine whether the City has committed itself to a nondiscriminating level of services, and the residents and the courts have a benchmark against which to measure the level of services which the residents receive within the statutory period.

*In re Annexation Ordinance*, 304 N.C. 549, 554-55, 284 S.E. 2d 470, 474 (1981) (emphasis added).

In accord with this reasoning in *In re Annexation Ordinance*, as set forth by Chief Justice Branch, the required information is not that of plans for extending *all* municipal services, but only the "major" municipal services. It must be presumed that at the time G.S. § 160A-47(3) was enacted our Legislature was aware of the myriad of services traditionally furnished by our municipalities,

some of which we subsequently enumerate. Yet only six such services are specifically referred to in the statute.

In keeping with what we believe was clearly the intent of the Legislature, we hold that the statute requires municipalities to include in their annexation reports plans to extend into the area proposed to be annexed only those municipal services specifically enumerated in G.S. § 160A-47(3): police protection, fire protection, garbage collection, street maintenance, major trunk water mains, and sewer outfall lines.

We note that the overwhelming majority of the many annexation reports reviewed by this Court in recent years, including the one before us here, have contained plans for extending into the area proposed for annexation many of the wide range of municipal services not specifically enumerated in the statute. Among the services included have been plans for providing parks and recreation, street construction, street lighting, street cleaning, street name markers, public transit, and public utilities. *See,* for example, *In re Annexation Ordinance,* 303 N.C. 220, 278 S.E. 2d 224; *In re Annexation Ordinance,* 253 N.C. 637, 117 S.E. 2d 795 (1961). *See also Rexham Corp. v. Town of Pineville,* 26 N.C. App. 349, 216 S.E. 2d 445 (1975). Though not required by law to be included in the annexation report, plans for extension of these other services are very informative to persons in the proposed annexation area. The report of plans for extension of services is the cornerstone of the annexation procedure under Part 3, Article 4A of Chapter 160A, and to be of greatest possible benefit, the plans for services should be stated as fully and in as much detail as resources of the municipality reasonably permit.

Here, the City's Annexation Report contains plans for providing not only police and fire protection, street maintenance, water and sewer service, and garbage collection, as required by the statute, but also contains plans for providing parks and recreation, street cleaning and lighting, street name markers, and street construction. Clearly the report fulfilled the requirements of G.S. § 160A-47(3). We conclude therefore that the trial judge was correct in not allowing the evidence proffered by the petitioners to show that the Annexation Report and Annexation Ordinance were defective by reason of their failure to include plans

for the extension of transit service[2] and CATV service into the area proposed for annexation.[3]

The City of Raleigh provides public transit service through the Raleigh Transit Authority, a transit authority created by the General Assembly, and cable television service is provided pursuant to a franchise agreement. The City contends that since these services are not provided by the City proper it is not necessary to include them in the annexation report. G.S. § 160A-47(3) requires that the annexation report contain a statement setting forth the plans for extending "each major municipal service performed within the municipality at the time of annexation." A service, such as water or sewer service, is a "municipal service" even though it is performed or furnished by an independent authority or by franchise. The requirement extends to a major service "*performed within* the municipality," not *performed by* the municipality. We believe that the Legislature intended to include those services enumerated in G.S. § 160A-47(3) which are traditionally furnished by municipalities whether provided by the City´ work force, or in a particular instance, by an independent authority such as a countywide water-sewer authority, or by franchise. If the municipal service is one enumerated in G.S. § 160A-47(3), it must be included in the annexation report even though it is provided by an independent authority or under a franchise agreement.

II

[2] A second objection made by the petitioners is based upon their contention that the City of Raleigh violated its own utility

2. The Raleigh City Council amended the Brookhaven Annexation Report dated 15 April 1980 by adding a statement that transit services would be made available in the annexed area in substantially the same manner as available within the city limits.

3. The trial judge made the conclusion that petitioners were not entitled to raise these issues because their petition did not explicitly raise them as required by G.S. § 160A-50(b). Because of our holding that city bus service and CATV service are not "major" municipal services required to be addressed in the annexation report, we need not decide whether those issues were adequately raised in the petition challenging the annexation. See, however, *Moody v. Town of Carrboro*, quoting G.S. § 160A-50(b), "Such petition shall explicitly state what exceptions are taken to the action of the governing board and what relief the petitioner seeks." 301 N.C. 318, 271 S.E. 2d 265 (1980).

policy when in 1967 it extended water service to Brookhaven without requiring the developer to install a sewer system. They contend that this violation by the City of its own policy now makes compliance with G.S. § 160A-47(3)b (extending sewer outfall lines so as to make service in the annexed area available according to the same policies in effect within the City) impossible. We cannot agree.

Brookhaven is a residential subdivision developed during the early to mid-1960's. The original developer installed a private community water system to serve the subdivision. No sewer system was installed and most of the improved lots in the subdivision are served by septic tanks. In 1967 the City of Raleigh agreed to and did connect the Brookhaven water system to its municipal system to furnish water to the subdivision. Some ten years later, in 1977, the City acquired ownership of the Brookhaven system.

G.S. § 160A-47(3)b provides that, with regard to plans for extension of water and sewer service in a proposed annexation, the annexing municipality must:

> Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed *so that when such lines are constructed, property owners in the area to be annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions.*

(Emphasis added.)

The municipality must stand ready to offer such service according to its own water and sewer extension policies already in effect.

Petitioners do not contend that the City has failed to provide for the extension of major trunk water mains or sewer outfall lines to the Brookhaven area, but that the extension will not be such that the Brookhaven property owners will be able to secure water and sewer service according to the City policies in effect for extending water and sewer lines to individual lots or subdivisions.

The City of Raleigh's water and sewer extension policies contain specific requirements relating to the connection of privately

installed utility lines to the City's utility systems. Raleigh City Code §§ 8-2061 - 8-2074 (1980). These provisions are a part of the City's policy in effect for extending water and sewer lines to individual lots and subdivisions.

Specifically, Raleigh City Code Section 8-2066 provides in pertinent part that:

> No private water line, lines or system within any residential development or subdivision outside the corporate limits shall be connected with the water system of the city, nor will the city accept any dedication of the same and agree to furnish water service to consumers within any such residential development or subdivision, unless, at the same time, there is connected with the city sewerage system and dedicated to the city an adequate sewerage system or sewerage lines layed and constructed within such residential development or subdivision sufficient to make available adequate sewerage services for each of the residential lots within such subdivision . . . .

The City did not comply with Section 8-2066 when it connected its water system with the private water system in Brookhaven in 1967. Nor did the City apply or enforce this policy ten years later when it acquired ownership of the system by a combination of dedication and purchase. (There is no dispute that Section 8-2066 was in effect at these times.) The petitioners presented this evidence at the trial. The trial court concluded, however, that whether the City violated its own policy made no difference under the annexation laws. We agree.

Petitioners contend that it is now impossible for them to secure sewer service according to the City's policies. They argue that had the City of Raleigh enforced its policy as expressed in Section 8-2066 of the City Code in 1967 when it connected the Brookhaven water system to the City system, or in 1977 when it acquired ownership of the Brookhaven water system, provision for a sewer system would already have been made.

On the other hand, the City of Raleigh interprets Section 8-2066, and correctly so, to apply to those situations where individual homeowners are to become customers of the City of Raleigh, not of a private utility company. Apparently in 1967 the

City simply sold water to the developer of the subdivision who in turn sold it to the consumer. No individual consumer at the time of the City's initial linkup to the Brookhaven private system was a direct customer of the City of Raleigh. Mr. J. R. Butler, Public Utilities Director of the City of Raleigh, testified that the ordinance was not applicable to the Brookhaven area and that any other areas or subdivisions so situated would be treated the same as Brookhaven.

Even if Section 8-2066 applied to the Brookhaven situation as it existed in 1967 and 1977, it is obviously impossible to go back now and undo the violation. Under G.S. Chapter 160A, Art. 10 (1976 & 1981 Cum. Supp.), upon the initiative of the City Council, water and sewer line projects may be constructed and the cost thereof assessed against the adjoining property owners. Raleigh's Public Utilities Director referred to this procedure in his testimony. It is therefore possible that the petitioners will be subject to a substantial assessment for the cost of installing water and sewer laterals to serve individual lots in Brookhaven. The situation would be the same, however, for any subdivision being annexed which operates on wells and septic tanks and which has never been connected to the City's water system. It is too late to treat Brookhaven subdivision any differently because thirteen years ago it was connected to the City water system without the installation of a sewer system in violation of City policy.

Since the violation cannot be undone and sewers can never be provided according to the petitioners' interpretation of City policy, to accept petitioners' position would leave Brookhaven subdivision forever immune from annexation no matter how intensely it developed.

Petitioners do not contend that the sewer service provided them will be any different than that provided within the city limits prior to or at the time of annexation. The record fails to disclose any discrimination in the price or quality of water and sewer service. Petitioners' real objection seems to be the fact that they will be assessed for the installation of sewer lines, which would not be the case had the City required installation of a sewer system before the subdivision was connected to the City water system. Apparently, it is this financial consideration which prompts petitioners to pray that, because the present predica-

ment arises from the City's failure to enforce its own policy, the matter should be remanded to the City Council "to review what factors if any, should be taken into account in establishing the front foot cost for sewer line assessments in Brookhaven."[4]

The petitioners cannot use the City's failure to follow its policy to litigate the financial impact of possible sewer assessments against them.

> A property owner . . . can attack annexation proceedings only upon the grounds specified in the statutes. He cannot successfully resist annexation because a city ordinance will adversely affect his financial interest.

*In re Annexation Ordinance*, 278 N.C. 641, 648, 180 S.E. 2d 851, 856 (1971).

We hold that the failure of the City of Raleigh to comply with its own policy for extending water service to the subdivision occupied by the petitioners in 1967 or in acquiring ownership of the system in 1977 does not invalidate the annexation or require remand to the City Council.

The City of Raleigh has shown *prima facie* complete and substantial compliance with the provisions of our annexation statutes by setting forth its plans for extending to the area to be annexed the services enumerated in G.S. § 160A-47(3). The petitioners have the burden of showing by competent and substantial evidence a failure to meet the statutory requirements. *In re Annexation Ordinance*, 303 N.C. 220, 278 S.E. 2d 224. They have failed to carry their burden.

The judgment of the Superior Court affirming the annexation ordinance is

Affirmed.

Justice MARTIN took no part in the consideration or decision of this case.

---

4. The relief sought by the petitioners (consideration by the City Council of sewer assessment rates) is available in effect as a matter of law because of the requirement for public hearings to authorize any sewer assessment, and additional public hearings to confirm the amount of the assessment, which is built into the statutory assessment procedure. (G.S. Ch. 160A, Art. 10 (1976 & 1981 Cum. Supp.).)