MARK E. CAPPS AND WIFE, PAULA L. CAPPS; ROBERT B. DAWSON; FLOYD D. LOFTIN, JR. AND WIFE, KATHY T. LOFTIN; MAMIE S. O'NEAL; STEWART W. SMITH AND WIFE, EVA H. SMITH, AND MICHAEL J. WARD AND WIFE, LINDA H. WARD, PETITIONERS-APPELLANTS v. CITY OF KINSTON, RESPONDENT-APPELLEE

No. COA10-1477

(Filed 16 August 2011)

**1. Cities and Towns—annexation—street maintenance services**

The trial court did not err in an annexation case by concluding the annexation report stated a plan for providing street maintenance services on substantially the same basis and in the same manner as such services were provided in the rest of the city.

**2. Cities and Towns—annexation—public sewer service**

The trial court did not err in an annexation case by concluding that an annexation report stated a plan whereby property owners in the annexation area would be able to secure public sewer service in accordance with respondent city's policies.

**3. Cities and Towns—annexation—financial impact**

The trial court did not err in an annexation case by concluding that respondent city provided a sufficient statement in an annexation report showing the financial impact of the annexation as required by N.C.G.S. § 160A-47(5).

**4. Cities and Towns—annexation—compliance with requirements for fixing boundaries**

The trial court erred in an annexation case by concluding that respondent city complied with the requirements of N.C.G.S. § 160A-48(e) when it fixed certain boundaries of an annexation area. This issue was remanded for further action.

CAPPS v. CITY OF KINSTON

[215 N.C. App. 110 (2011)]

Appeal by Petitioners from judgment entered 21 April 2010 by Judge Kenneth F. Crow in Superior Court, Lenoir County. Heard in the Court of Appeals 26 April 2011.

*Eldridge Law Firm, PC, by James E. Eldridge, for Petitioners-Appellants.*

*Rose Rand Wallace Attorneys, P.A., by James P. Cauley, III, Kimberly Connor Benton, and J. Brian Pridgen, for Respondent-Appellee.*

McGEE, Judge.

The City of Kinston (Respondent) adopted a resolution on 17 September 2007, stating its intention to consider annexation of 501.45 acres of real property in Lenoir County, North Carolina (the Annexation Area). Respondent adopted a resolution of intent on 22 January 2009 "to consider annexing the Annexation Area and fixing the dates of the public informational meeting and public hearing." Respondent adopted a second resolution of intent on 16 February 2009, "which rescinded the [22 January 2009] resolution, described the boundaries of the Annexation Area, re-stated [Respondent's] intent to consider annexation of the Annexation Area and fixed the dates for the public informational meeting and public hearing[.]" In February 2009, prior to the public informational meeting, Respondent adopted an "Annexation Report and Plan of Services" (Annexation Report).

The Annexation Report provided for, *inter alia*, the annexation of seven acres of developed land (the Galaxy Mobile Home Park) within a larger 34.29 acre lot (the Greater Galaxy Mobile Home Park Property). Silverdale Road runs through a portion of the Greater Galaxy Mobile Home Park Property. Two sections of the annexation boundary line, which divides the Galaxy Mobile Home Park from the undeveloped remainder of the Greater Galaxy Mobile Home Park Property, are drawn parallel to Silverdale Road. Neither of these two sections of the annexation boundary line is drawn on top of a recorded property line or a street. These two sections were drawn parallel to, rather than on, Silverdale Road in order to include portions of the Galaxy Mobile Home Park which lie on the opposite side of Silverdale Road from the remainder of the Galaxy Mobile Home Park.

Respondent adopted an "Ordinance to Extend the Corporate Limits of the City of Kinston Under Authority Granted by Part 3, Article 4A, Chapter 160A of the General Statutes of North Carolina" (the Annexation Ordinance) on 1 June 2009. Petitioners are owners of

property located within the Annexation Area who filed a petition, pursuant to N.C. Gen. Stat. § 160A-50, in Superior Court in Lenoir County on 30 July 2009 to review Respondent's adoption of the Annexation Ordinance. N.C. Gen. Stat. § 160A-50(f) (2009) states:

> The review shall be conducted by the [trial] court without a jury. The [trial] court may hear oral arguments and receive written briefs, and may take evidence intended to show either
>
> (1) That the statutory procedure was not followed, or
>
> (2) That the provisions of G.S. 160A-47 were not met, or
>
> (3) That the provisions of G.S. 160A-48 have not been met.

Our Court has explained the standard of review for the trial court, and for our Court on appeal, as follows:

> [N.C.G.S. § 160A-50(f)] limit[s] the court's inquiry to a determination of whether applicable annexation statutes have been substantially complied with. When the record submitted in superior court by the municipal corporation demonstrates, on its face, substantial compliance with the applicable annexation statutes, then the burden falls on the petitioners to show by competent and substantial evidence that the statutory requirements were in fact not met or that procedural irregularities occurred which materially prejudiced their substantive rights.
>
> . . . .
>
> The findings of fact made by the trial court are binding on the appellate court if supported by competent evidence, even if there is evidence to the contrary; conclusions of law drawn from the findings of fact are, however, reviewable *de novo*.

*Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987) (citations omitted). " '[F]indings of fact [which] are essentially conclusions of law . . . will be treated as such on appeal.' " *Norwood v. Village of Sugar Mountain*, 193 N.C. App. 293, 298, 667 S.E.2d 524, 528 (2008) (citations omitted).

I.

[1] Petitioners first argue that the "Annexation Report does not state a plan for providing street maintenance services on substantially the same basis and in the same manner as such services are provided in the rest of the City." We disagree.

**CAPPS v. CITY OF KINSTON**

[215 N.C. App. 110 (2011)]

In relevant part, N.C. Gen. Stat. § 160A-47 (2009) provides:

A municipality exercising authority under this Part shall make plans for the extension of services to the area proposed to be annexed and shall, prior to the public hearing provided for in G.S. 160A-49, prepare a report setting forth such plans to provide services to such area. The report shall include:

. . . .

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

a. Provide for extending . . . street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.

The trial court in this action made the following uncontested findings of fact:

10. Regarding street maintenance, the Annexation Report states that all public streets within the Annexation Area are currently maintained by NC DOT and no public streets in the Annexation Area would become city-maintained.

11. [NC DOT] presently maintains all public streets contained within the Annexation Area and has represented that it will continue maintaining them at the same level it is presently maintaining them and at the same level at which NC DOT maintains streets currently within the corporate limits of . . . Respondent. This representation was confirmed by the testimony of officials of Respondent and through the unopposed affidavits of Preston Hunter, NC DOT district engineer for Lenoir County, and Tommy Lee, former Planning Director of . . . Respondent.

12. The Annexation Area contains the following private streets:

    a. A section of Beechnut Drive in Hickory Hills subdivision;
    b. The end of Holly Ridge Road; and
    c. All streets contained within the Galaxy Mobile Home Park.

13. It is the policy of . . . Respondent that unless offered for dedication to and accepted by . . . Respondent, private streets contained within the corporate limits are the responsibility of the

owner and . . . Respondent does not provide street maintenance services for private streets. As testified to by witnesses for . . . Respondent, if an offer of dedication is accepted by . . . Respondent, . . . Respondent will provide the same maintenance services to those streets as it does to all other streets located within its corporate limits.

The trial court determined the following in its finding of fact 14:

14. Respondent's plan for extending street maintenance services to the Annexation Area, as set forth in the Annexation Report and as testified to by witnesses for . . . Respondent, will provide street maintenance services to the Annexation Area on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.

Although listed under the trial court's "Findings of Fact[,]" we find paragraph 14 to be a conclusion of law, and review it as such. *See Norwood*, 193 N.C. App. at 298, 667 S.E.2d at 528 (citations omitted). The trial court also concluded that "the Annexation Report contain[ed] a statement setting forth the plans of . . . Respondent for the extension of street maintenance services to the Annexation Area in compliance with N.C.G.S. [§] 160A-47(3)(a)." We hold that these conclusions are supported by the above uncontested findings of fact. Petitioners' argument is without merit.

II.

[2] Petitioners' second argument is that the "Annexation Report does not state a plan whereby property owners in the Annexation Area will be able to secure public sewer service in accordance with [Respondent's] policies." We disagree.

Petitioners specifically argue that

[Respondent's] planned extension of sewer services was non-compliant because it did not provide for the extension of sewer lines in accordance with [Respondent's] policies for extending those lines to individual lots or subdivisions, and because the fees charged by [Respondent] for extending those lines to residential lots illegally reduced [Respondent's] cost of installing those extensions.

In relevant part, N.C.G.S. § 160A-47 provides:

A municipality exercising authority under this Part shall make plans for the extension of services to the area proposed to be

annexed and shall, prior to the public hearing provided for in G.S. 160A-49, prepare a report setting forth such plans to provide services to such area. The report shall include:

. . . .

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

. . . .

b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed so that when such lines are constructed, property owners in the area to be annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions . . . . In areas where the municipality is required to extend sewer service according to its policies, but the installation of sewer is not economically feasible due to the unique topography of the area, the municipality shall provide septic system maintenance and repair service until such time as sewer service is provided to properties similarly situated.

The trial court made the following uncontested findings of fact related to this issue:

26. Municipal sewer service is not currently available in the majority of the Annexation Area.

. . . .

29. Property owners who want to connect to the municipal sewer system may have the pump installed themselves or may pay [Respondent] a fee of $1,000.00 to perform the installation.

30. . . . Respondent's policy in past annexations did not require immediate connection to . . . Respondent's sewer system, but allowed the property owner to connect when their current septic system fails.

31. The Annexation Report states and the testimony of witnesses for . . . Respondent confirmed that the same policy applied in past annexations regarding existing septic tanks shall apply to the Annexation Area.

CAPPS v. CITY OF KINSTON

[215 N.C. App. 110 (2011)]

32. The Annexation Area does not have unique topography which would make the extension of sewer service into the Annexation Area economically infeasible.

33. The majority of the residences within the Annexation Area are served by privately owned septic tanks averaging over thirty (30) years of age and have an average lot size of .5 acres. Witnesses for . . . Respondent testified that the low average lot size of residences within the Annexation Area would severely limit and/or prohibit the replacement of septic tanks on most of the Annexation Area residences at any point in the future.

34. The Annexation Area is not served by a single, unified home-owners association.

35. In reaching its decision to extend sewer lines into the Annexation Area and not to provide maintenance services for existing septic tanks, . . . Respondent considered the advanced age of the existing septic tanks, average residential lot sizes within the Annexation Area, and the concern expressed by the Lenoir County Health Department regarding the age and condition of existing septic tanks within the Annexation Area.

36. Respondent's current sewer service policy provides that when . . . Respondent is obligated to provide public sewer services and finds, after thorough engineering and financial review, analysis, and evaluation, it is not feasible or practical for it to provide gravity or force main sewer service to a specific property or (properties), . . . Respondent may provide sewer service through and by use of an approved septic tank system.

37. A force main sewer system is an economically feasible option for providing sewer service to the Annexation Area and was the system adopted by . . . Respondent in the Annexation Report.

38. [Respondent] does not routinely provide septic tank maintenance and/or repair for properties located within the existing corporate limits.

39. In 1989, . . . Respondent reached an agreement with the Hillcrest Farms Homeowners Association (hereinafter the "Hillcrest Agreement") whereby all residents of the subdivision collectively agreed, by and through the single entity Hillcrest Farms Homeowners' Association, to allow . . . Respondent to maintain their septic tanks.

40. Features existing in the Hillcrest Subdivision in 1989 which do not exist in the Annexation Area in 2009 include an average age of septic tanks of ten years or less (versus 36-43 years within the Annexation Area), a pond/lake, uneven terrain, rolling topography, average lot size of 1.8 acres (versus .5 acres within the Annexation Area), adequate septic field repair areas, and only twelve developed lots (versus 438 in the Annexation Area). These factors made the extension of sewer lines to the Hillcrest Subdivision economically infeasible.

41. The facts and circumstances underlying the Hillcrest Agreement are distinguishable from those in the current Annexation Area.

The trial court also made the following contested finding of fact:

28. A $1,500.00 tap fee will be charged to residential property owners in the Annexation Area who choose to connect to . . . Respondent's sewer line. This same fee is charged to all other city residents who request to connect to Respondent's sewer system.

Petitioners allege that the trial court's finding of fact 28 is not supported by the evidence. We disagree. The Annexation Report states that:

Sewer service for the annexation area will be provided to those requesting it by construction of a low-pressure sewer collector line system with individual pumps at each property.

Construction of the public portion of this system will cost approximately $236,000. The cost to install the pump and associated work at each residential lot is estimated [to] be $4,840. The cost to install the pump and associated work at each commercial lot will be approximately $8,580. A different pump system is required by state regulations for commercial properties than for residential properties. A portion of this cost will be recovered by charging a $1,500 tap fee plus a $1,000 installation fee—$2,500 total for each residence.

In addition, City Manager Scott Stevens (Mr. Stevens) testified that, in prior situations where a low-pressure sewer system was installed and a tap fee was paid, the customer paid a $1,500.00 tap fee. Because this evidence supports the trial court's finding that the $1,500.00 tap fee provided for in the Annexation Report is the "same fee . . . charged to all other city residents who request to connect to Respondent's sewer

system[,]" the finding is binding on appeal despite the existence of evidence to the contrary. *See Huyck*, 86 N.C. App. at 15, 356 S.E.2d at 601 (citations omitted).

Petitioners also argue that the trial court erred by concluding that the extension of sewer services to the Annexation Area was in compliance with the applicable statues. We disagree. The trial court made the following contested finding of fact:

27. The Annexation Report complies with N.C.G.S. 160A-47[(3)](b) [sic] by stating that . . . Respondent will provide sewer service to the Annexation Area by constructing a low-pressure sewer collector line system with individual pumps at each property and by describing in detail how this service will be timely extended to the Annexation Area.

Although listed under the trial court's "Findings of Fact[,]" we find paragraph 27 to be a conclusion of law, and review it as such. *See Norwood*, 193 N.C. App. at 298, 667 S.E.2d at 528 (citations omitted). The trial court also made the following contested conclusions of law:

5. That the Annexation Report, in compliance with N.C.G.S. 160A-47(3)(b), contains a statement setting forth the plans for the extension of sewer outfall lines into the Annexation Area so that when such lines are constructed, property owners in the area to be annexed will be able to secure public sewer service, according to the policies in effect for . . . Respondent for extending sewer lines to individual lots or subdivisions.

6. Providing septic tank maintenance and repair service in lieu of sewer service in the Annexation Area would not comply with N.C.G.S. 160A-47(3)(b), as the Annexation Area does not have unique topography which would make the installation of sewer in the Annexation Area economically infeasible.

. . . .

16. That the Annexation Report is in substantial compliance with N.C.G.S. 160A-47 and all other applicable statutory requirements.

Petitioners specifically argue that the $1,000.00 installation fee (the installation fee) was not adopted by Respondent at least 180 days prior to the adoption of the 16 February 2009 resolution of intent to annex the Annexation Area. We disagree.

N.C. Gen. Stat. § 160A-47.1 (2009) provides:

> For purposes of the extension of water and sewer services required under G.S. 160A-47, no ordinance or policy substantially diminishing the financial participation of a municipality in the construction of water or sewer facilities required under this Article may apply to an area being annexed unless the ordinance or policy became effective at least 180 days prior to the date of adoption by the municipality of the resolution giving notice of intent to consider annexing the area under G.S. 160A-49(a).

The installation fee is not expressly included in Respondent's official utility fee schedule (the fee schedule). However, Mr. Stevens testified that the installation fee was provided for in the fee schedule under a catch-all provision designed to provide installation and tap fees for irregular tap sizes, such as the tap size required for the low-pressure sewer system provided for in the Annexation Report. The catch-all provision states: "Fees for all other sewer tap sizes shall be based on actual cost to install, plus 10%, plus a Capital Recovery Fee of $500 per inch diameter of tap." Mr. Stevens testified that the fee schedule was adopted by Respondent more than 180 days prior to the adoption of the 16 February 2009 resolution of intent. The fee schedule and Mr. Stevens' testimony, taken together, provide sufficient evidence to support the trial court's determination that the Annexation Report complies with N.C.G.S. § 160A-47.1. Petitioners have not met their burden to prove otherwise by substantial, competent evidence.

Thus, based upon the trial court's findings of fact, and our determination that the installation fee complies with the statutory requirements, we hold that the requirements of N.C.G.S. § 160A-47 were met as to this issue. Petitioners' argument is without merit.

## III.

[3] Petitioners' third argument is that Respondent "failed to provide a sufficient statement in the annexation Report showing the financial impact of the annexation as required by N.C. Gen. Stat. § 160A-47(5)[.]" We disagree.

N.C. Gen. Stat. § 160A-47(5) (2009) states that an annexation report shall provide a "statement showing how the proposed annexation will affect the city's finances and services, including city revenue change estimates."

Although it is unclear from Petitioners' brief how, exactly, they contend Respondent has failed to comply with N.C.G.S. § 160A-47(5), Petitioners' argument seems to rely upon issues we have already decided above. Petitioners argue in their brief:

> As shown above, [Respondent] has substantially—by at least $489,000 through the imposition of the $1000 installation fee— and illegally reduced its cost of extending sewer lines into the Annexation Area. While it cannot be precisely calculated, the inflated $1500 sewer tap fee also benefits [Respondent] in this regard.

> These omissions are material to this annexation proceeding since . . . Petitioners, along with the rest of the public and [Respondent's] governing board, needed to have reliable information available to them to ensure a meaningful public hearing[.]

We cannot determine to what "omissions" Petitioners refer without reading into Petitioners' argument language and reasoning that is not there. We will not make assumptions, nor make Petitioners' argument for them. It seems clear, however, that whatever Petitioners might contend the "omissions" to be, Petitioners' argument relies upon their contention that the $1000.00 installation fee and the $1500.00 sewer tap fee were "illegal."

As shown above, the $1,500.00 sewer tap fee is provided for in the Annexation Report and is the fee previously charged to property owners who connected to Respondent's sewer system through low-pressure connector lines like those to be provided to the Annexation Area. The installation fee is also provided for in the Annexation Report and is included in the catch-all provision of the fee schedule. Both of these sewer-related fees were appropriately included in the Annexation Report's financial statement.

Petitioners make no other arguments regarding Respondent's alleged failure to comply with N.C.G.S. § 160A-47(5). Petitioners have failed to show that the Annexation Report did not comply with N.C.G.S. § 160A-47(5). Petitioners' argument is without merit.

IV.

[4] Petitioners' fourth argument is that the trial court erred by concluding that Respondent complied with the requirements of N.C. Gen. Stat. § 160A-48(e) when it fixed certain boundaries of the Annexation Area. We agree.

In fixing new municipal boundaries, a municipal governing board *shall use recorded property lines and streets as boundaries.* Some or all of the boundaries of a county water and sewer district may also be used when the entire district not already within the corporate limits of a municipality is being annexed.

N.C. Gen. § 160A-48(e) (2009) (emphasis added).

The trial court made the following uncontested findings of fact:

53. The Annexation Area contains seven acres of a 34.29 acre parcel indentified as Lenoir County Tax Parcel Number 4506-01-5625 and otherwise referred to as the "[Greater] Galaxy Mobile Home Park Property."

54. Only the developed portion of the [Greater] Galaxy Mobile Home Park Property is included in the Annexation Area.

55. The portion of the [Greater] Galaxy Mobile Home Park Property which is not included in the Annexation Area is unlikely to be developed due to a sloping topography which generally follows the Annexation Boundary.

. . . .

57. The westerly portion of the Annexation Boundary contained within the [Greater] Galaxy Mobile Home Park Property and which separates the developed portion from the undeveloped portion, follows in a northerly direction parallel to Silverdale Road, then follows established property lines, then again follows parallel to Silverdale Road, then follows Pantego Drive.

58. In establishing the portion of the Annexation Boundary located within the [Greater] Galaxy Mobile Home Park Property, . . . Respondent used streets and recorded property lines.

59. In establishing the portions of the Annexation Boundary that follow parallel to Silverdale Road, . . . Respondent used a street in setting the Annexation Boundary.

60. Placement of the Annexation Boundary directly on Silverdale Road would have excluded three developed parcels from the Annexation Area. Such an exclusion would have adversely impacted the provision of emergency services to the three excluded residential lots.

As Petitioners argue, these findings of fact do not support the trial court's conclusion that "the setting of the Annexation Boundary parallel to Silverdale Road within the [Greater] Galaxy Mobile Home Park Property complies with the requirements of N.C.G.S. 160A-48(e)."

> "An important function of statutory construction is to ensure accomplishment of the legislative intent." Accordingly, we first look to the words chosen by the legislature and "if they are clear and unambiguous within the context of the statute, they are to be given their plain and ordinary meanings." Our legislature, in enacting the current version of N.C. Gen. Stat. § 160A–48(e) (2005), removed the "whenever practical" language of the previous versions of the statute and used the word "shall." As such, the plain language of the statute establishes that § 160A–48(e) is a mandatory provision. However, we look not only to the provision at issue but also to the statutory scheme as a whole and to our prior interpretations of the statutory framework. Our Supreme Court has recognized that

>> It is generally held that slight irregularities will not invalidate annexation proceedings if there has been substantial compliance with all essential provisions of the law. Absolute and literal compliance with a statute enacted describing the conditions of annexation is unnecessary; substantial compliance only is required . . . . . The reason is clear. Absolute and literal compliance with the statute would result in defeating the purpose of the statute in situations in which no one has been or could be misled.

*Fix v. City of Eden*, 175 N.C. App. 1, 19, 622 S.E.2d 647, 658 (2005) (citations omitted). In light of the amendment mandating that "a municipal governing board shall use recorded property lines and streets as boundaries[,]" the plain language of N.C.G.S. § 160A-48(e) requires that a municipal governing board draw annexation boundary lines on recorded property lines and on streets. Although the annexation boundary lines at issue may run *parallel* to Silverdale Road, they are not located *on* either a recorded property line or *on* a street. Mr. Stevens testified that the annexation boundary lines at issue were set off from Silverdale Road so that the Annexation Area would include portions of the Galaxy Home Mobile Park which were located on the opposite side of Silverdale Road from the remainder of the Galaxy Mobile Home Park. As such, the annexation boundary lines at issue do not substantially comply with N.C.G.S. § 160A-48(e). Were

we to hold that a municipal governing board's drawing of annexation boundary lines parallel to—rather than on—recorded property lines and streets substantially complied with the statute, the amendment to N.C.G.S. § 160A-48(e) would essentially be ignored.

Respondent cites to *Fix* in support of the trial court's conclusion that the setting of an annexation boundary line parallel to a street complies with the requirements of N.C.G.S. § 160A-48(e). In *Fix*, our Court held that the City of Eden had substantially complied with the requirements of N.C.G.S. § 160A-48(e), even though a portion of the annexation boundary line was set along a creek rather than on a recorded property line or street. *Fix*, 175 N.C. App. at 19-20, 622 S.E.2d at 658-59. The *Fix* Court based its holding on the fact that literal compliance with N.C.G.S. § 160A-48(e) would have resulted in a " 'gap' . . . between the City's current boundaries and the area of land to be annexed." *Id*. at 20, 622 S.E.2d at 659. In the present case, the record does not show, and Respondent does not contend, that setting the annexation boundary on a recorded property line or street would have resulted in a "gap," or some similar condition, between Respondent's current boundaries and the Annexation Area. *Fix* is distinguishable and does not control our decision.

Thus, the trial court's conclusion that "the setting of the Annexation Boundary parallel to Silverdale Road within the [Greater] Galaxy Mobile Home Park Property complies with the requirements of N.C.G.S. 160A-48(e)" is in error. Accordingly, we remand this issue to the trial court for further action not inconsistent with this opinion.

Affirmed in part; remanded in part.

Judges ERVIN and BEASLEY concur.