An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-756

NORTH CAROLINA COURT OF APPEALS

Filed:  6 May 2014

ROANOKE COUNTRY CLUB, INC., T&J
PROPERTIES, LLC, ROBERT R. MARTIN
AND WIFE, THERESA W. MARTIN AND
REGINALD W. ROSS, JR. AND WIFE,
DELORES ROSS,
    Petitioners

        v.                              Martin County
                                        No. 10 CVS 374

TOWN OF WILLIAMSTON,
    Respondent


        Appeal by petitioners from order entered 29 February 2012

and judgment entered 18 February 2013 by Judge Marvin K. Blount,

III in Martin County Superior Court.  Heard in the Court of

Appeals 11 December 2013.


        *Eldridge Law Firm, PC, by James E. Eldridge, for
        petitioner-appellants.*

        *Sharp, Michael, Graham & Baker, LLP, by Ronald G. Baker,
        for respondent-appellee.*


        CALABRIA, Judge.


        Petitioners appeal from (1) the trial court's judgment in

favor of the Town of Williamston ("respondent"), which affirmed

respondent's annexation ordinance ("the ordinance"); and (2) the

trial court's order awarding sanctions to respondent due to petitioners' failure to comply with the Rules Implementing Statewide Mediated Settlement Conferences in Superior Court Civil Actions ("the mediation rules"). We affirm.

## I. Background

On 5 January 2009, respondent adopted a "Resolution of Consideration" identifying an area of land for potential annexation ("the annexation area"). On 11 January 2010, respondent adopted a "Resolution of Intent" which described the boundaries of the annexation area and fixed the dates for a public informational meeting and public hearing. Respondent also adopted an annexation report which stated that the degree of coincidence between the annexation area's boundary and respondent's corporate limits was 20.49%. A portion of the proposed boundary of the annexation area ran along a private road known as Courtney Lane.

Respondent conducted a public informational meeting on 1 March 2010 and a public hearing on 5 April 2010. On 3 May 2010, respondent adopted an annexation ordinance for the annexation area with an effective date of 3 September 2010. Prior to that date, on 1 July 2010, petitioners, who own real property within

the annexation area, filed a petition for review of the annexation in Martin County Superior Court.

The case was mediated on 1 September 2011. Petitioners Theresa W. Martin ("Mrs. Martin") and Delores Ross ("Mrs. Ross") did not attend this mediation. In addition, no one with the authority to settle the case on behalf of petitioners Roanoke Country Club, Inc. ("RCC") and T&J Properties, LLC, ("T&J") was present. During the mediation, respondent was informed that any agreement made during the course of the mediation would need to be approved by a voluntary association known as the Martin County Citizens Against Annexation ("MCCAA"), of which all petitioners were members, and by the Board of Directors of RCC. The parties that were actually present at the mediation were able to negotiate a preliminary settlement agreement. However, this agreement was subsequently rejected by MCCAA.

On 19 October 2011, respondent filed a motion for sanctions against petitioners due to the failure of all petitioners to attend the mediated settlement conference as required by N.C. Gen. Stat. § 7A-38.1 (2013) and Rule 4.A. of the mediation rules. On 29 February 2012, the trial court entered an order sanctioning petitioners and ordering them to pay $4,235.15 in

attorney's fees. In addition, Mrs. Martin and Mrs. Ross were fined $1,000.00.

After the mediated settlement agreement was rejected, the petition challenging the annexation was heard by the trial court in October 2012. On 18 February 2013, the court entered a judgment affirming the annexation. Petitioners appeal.

## II. Annexation

Petitioners argue that the trial court erred by affirming respondent's annexation. Specifically, petitioners contend (1) that the trial court erred by admitting into evidence respondent's trial exhibit 17; and (2) that the trial court erred by finding and concluding that respondent complied with all relevant annexation statutes.

### A. Trial Exhibit 17

Petitioners first argue that the trial court erred by admitting respondent's exhibit 17, a map of the annexation area from 2010, into evidence because the probative value of the exhibit was outweighed by unfair prejudice. However, as petitioners concede in their brief, they did not object to respondent's exhibit 18, a map of the annexation area in 2012, which is virtually identical to the map depicted in exhibit 17. While petitioners appear to be under the impression that it was

unnecessary to object to exhibit 18 because the "damage [was] already done" by the introduction of exhibit 17, it is well-established that "[w]hen . . . evidence is admitted over objection, *but the same or similar evidence has been previously admitted or is later admitted without objection*, the benefit of the objection is lost." *City of Statesville v. Cloaninger*, 106 N.C. App. 10, 17, 415 S.E.2d 111, 115-16 (1992)(internal quotations and citation omitted and emphasis added). Since petitioners did not object to exhibit 18, they cannot argue on appeal that the substantially similar exhibit 17 was inadmissible. This argument is overruled.

B. Compliance with Annexation Statutes

Petitioners next argue that the trial court erred by finding and concluding that respondent complied with all of the requirements of the statutes governing annexation. We disagree.

Judicial review of an annexation ordinance is limited to

> a determination of whether applicable annexation statutes have been substantially complied with. When the record submitted in superior court by the municipal corporation demonstrates, on its face, substantial compliance with the applicable annexation statutes, then the burden falls on the petitioners to show by competent and substantial evidence that the statutory requirements were in fact not met or that procedural irregularities occurred which materially prejudiced their substantive

rights.

> In determining the validity of an annexation ordinance, the court's review is limited to the following inquiries: (1) Did the municipality comply with the statutory procedures? (2) If not, will the petitioners suffer material injury thereby? (3) Does the area to be annexed meet the requirements of G.S. 160A-48 . . .?

*Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987) (internal quotations and citations omitted). "The party challenging the annexation has the burden of showing error." *In re Annexation Ordinance*, 296 N.C. 1, 10, 249 S.E.2d 698, 703 (1978).

Initially, we note that our annexation statutes were significantly overhauled in 2011. *See* 2011 N.C. Sess. Law 396. However, the annexation at issue in the instant case was initiated prior to this overhaul, and consequently, respondent was required to comply with the requirements established by the previous version of the annexation statutes. In the instant case, petitioners contend that respondent failed to satisfy the requirements included in N.C. Gen. Stat. § 160A-48 & -49 (2009).

1. N.C. Gen. Stat. § 160-49

Pursuant to N.C. Gen. Stat. § 160A-49,

> [a]t least 30 days before the date of the public informational meeting, the governing board shall approve the report provided for in G.S. 160A-47, and shall make it available to the public at the office of the municipal clerk. In addition, the municipality may prepare a summary of the full report for public distribution.

N.C. Gen. Stat. § 160A-49(c) (2009). At the hearing reviewing the annexation ordinance, petitioners Robert R. Martin ("Mr. Martin") and Reginald W. Ross, Jr. ("Mr. Ross") each testified before the trial court that they were unable to obtain full copies of the annexation report from respondent. However, N.C. Gen. Stat. § 160A-49(c) does not require that a complete copy of the annexation report be made available for distribution to the public. Instead, the statute only requires that the complete report be made *available* to the public at the office of the municipal clerk. Respondent's town clerk, Glinda Fox ("Fox"), specifically testified that the full annexation report was available in her office for the required statutory period. Fox's testimony was sufficient to support the trial court's finding and conclusion that respondent complied with N.C. Gen. Stat. § 160A-49. This argument is overruled.

2. N.C. Gen. Stat. § 160A-48

Petitioners next argue that the trial court erred by finding and concluding that respondent complied with the

requirements of N.C. Gen. Stat. § 160A-48. Specifically, petitioners contend that respondent's annexation failed to comply with N.C. Gen. Stat. § 160A-48(e), which requires that "[i]n fixing new municipal boundaries, a municipal governing board shall use recorded property lines and streets as boundaries." Petitioners contend that respondent's annexation violated this requirement because (1) the boundary line for the annexed area crosses streets; and (2) the boundary line runs along a private road known as Courtney Lane.

## a. Crossing Streets

Petitioners first argue that annexation boundaries which cross over streets are not permitted by N.C. Gen. Stat. § 160A-48(e) because "[w]hen read in conjunction with using recorded property lines in fixing the boundary, the language dictates that the boundary is properly established when it follows the street and not when it crosses over it." However, petitioners fail to cite any authority for this proposition. N.C. Gen. Stat. § 160A-48(e) simply requires the use of streets as boundaries. It does not specify that the boundary must continuously follow a particular side of a street and this Court cannot judicially impose such a requirement. *See Zaldana v. Smith*, ___ N.C. App. ___, ___, 749 S.E.2d 461, 463 (2013)("We

have no power to add to or subtract from the language of the statute." (internal quotations and citation omitted)). Instead, the statute allows for the annexation boundary to follow along any part of the street, so long as the boundary is actually included within the street. *Cf. Capps v. City of Kinston*, 215 N.C. App. 110, 122, 715 S.E.2d 520, 528 (2011)(invalidating an annexation boundary because it ran parallel to, rather than on, a street). Thus, respondent's annexation, with boundaries which followed recorded property lines and which crossed but continuously remained upon some portion of various streets, complied with N.C. Gen. Stat. § 160A-48(e) (2009). This argument is overruled.

b. Use of Private Road

Petitioners next argue that the use of the private street Courtney Lane as a boundary was not permitted by N.C. Gen. Stat. § 160A-48(e). Petitioners' argument is another attempt to add a requirement that is not specifically included in that statute. N.C. Gen. Stat. § 160A-48(e) merely requires the use of a "street" as a boundary; there is no requirement that the street be designated as public. In contrast, there are many examples of statutes which specifically apply only to public roads. *See, e.g.*, N.C. Gen. Stat. § 160A-300 (2013)("A city may by ordinance

prohibit, regulate, divert, control, and limit pedestrian or vehicular traffic upon *the public streets*, sidewalks, alleys, and bridges of the city." (emphasis added)). Since there is no specific "public" limitation in N.C. Gen. Stat. § 160A-48(e), we cannot judicially impose one. *See Zaldana*, ___ N.C. App. at ___, 749 S.E.2d at 463.

In the instant case, the trial court specifically found that "Courtney Lane is a street." The court additionally found that Courtney Lane served as a method of ingress and egress from three homes, including the sole method of access for one property, that Courtney Lane was also used for construction access, and that it would be used to access a shopping center in the future. These findings, which were supported by the evidence presented to the trial court, adequately support the trial court's determination that Courtney Lane was properly considered a street for purposes of N.C. Gen. Stat. § 160A-48(e). This argument is overruled.

Since we have rejected each of petitioners' arguments, we hold that the trial court properly upheld respondent's annexation and affirm the trial court's judgment.

### III. Mediation Sanctions

Petitioners argue that the trial court erred by ordering sanctions for the failure of some petitioners to attend mediation. We disagree.

Pursuant to N.C. Gen. Stat. § 7A-38.1(g),

> [a]ny person required to attend a mediated settlement conference or other settlement procedure under this section who, without good cause, fails to attend . . . in compliance with this section and the rules promulgated by the Supreme Court to implement this section is subject to . . . monetary sanctions imposed by a resident or presiding superior court judge.

N.C. Gen. Stat. § 7A-38.1(g) (2013). Rule 4.A.(1) of the mediation rules specifies that a mediation must be attended by "[a]ll individual parties" and that

> [a]ny party that is not a natural person or a governmental entity shall be represented at the conference by an officer, employee or agent who is not such party's outside counsel and who has been authorized to decide on behalf of such party whether and on what terms to settle the action or who has been authorized to negotiate on behalf of such party and can promptly communicate during the conference with persons who have decision-making authority to settle the action[.]

Regarding corporate parties, the rule further specifies that

> if a specific procedure is required by . . . the party's governing documents (*e.g.*, articles of incorporation, bylaws, partnership agreement, articles of organization or operating agreement) to

approve the terms of the settlement, then the representative shall have the authority to negotiate and make recommendations to the applicable approval authority in accordance with that procedure.

A. Mrs. Martin and Mrs. Ross

In the instant case, it is undisputed that neither Mrs. Martin nor Mrs. Ross attended the mediation. Petitioners filed an affidavit from Mr. Martin in which he attempted to explain Mrs. Martin and Mrs. Ross's absence by averring that he "obtained authority from [his] wife to appear . . . and negotiate on her behalf" and that he understood that Mr. Ross "was likewise authorized to appear and negotiate on his wife's behalf during the Mediation." However, there is nothing in the mediation rules which would permit Mrs. Martin and Mrs. Ross to authorize their husbands to represent them at mediation. Rule 4.A.(2) makes clear that "[a]ny party or person required to attend a mediated settlement conference shall physically attend until an agreement is reduced to writing and signed as provided in Rule 4.C. or an impasse has been declared." This rule's requirement of physical attendance by all parties may only be excused "(a) By agreement of all parties and persons required to attend and the mediator; or (b) By order of the senior resident superior court judge, upon motion of a party and notice to all

parties and persons required to attend and the mediator." There is no provision which would allow a party to unilaterally authorize someone to appear on their behalf.

Thus, the trial court properly found that Mrs. Martin and Mrs. Ross "did not attend the Mediated Settlement Conference and have offered no sufficient excuse for not attending." This finding, in turn, supported the trial court's conclusions that Mrs. Martin and Mrs. Ross violated the mediation rules by failing to attend the mediation.

### B. RCC and T&J

Finally, petitioners contend that RCC and T&J did not violate the mediation rules because they were both represented by an individual with "the authority to negotiate and make recommendations to the applicable approval authority" as required by Rule 4.A.(1). Petitioners base this argument upon the affidavit of George Griffin ("Griffin"), an officer of RCC, in which Griffin averred that he was authorized to negotiate on behalf of RCC, and upon Mr. Martin's affidavit, in which he averred that he contacted T&J's directors and obtained their consent to negotiate on the company's behalf. However, the trial court declined to credit these affidavits because it found that petitioners failed to present any governing documents from

either RCC or T&J which demonstrated that a specific method of approval was required for these entities. As the finder of fact, the trial court was entitled to decide that Mr. Martin and Griffin's respective affidavits were insufficient to establish RCC and T&J's compliance with Rule 4.A. *See Coble v. Coble*, 300 N.C. 708, 712-13, 268 S.E.2d 185, 189 (1980)("The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine *de novo* the weight and credibility to be given to evidence disclosed by the record on appeal."). Ultimately, the trial court's findings were sufficient to support its conclusions that both T&J and RCC violated the mediation rules. This argument is overruled.

## IV. Conclusion

Respondent's annexation complied with all relevant statutory requirements and, accordingly, we affirm the trial court's judgment upholding the annexation. The trial court properly concluded that Mrs. Martin, Mrs. Ross, RCC, and T&J violated the mediation rules. As a result, we affirm the trial court's order awarding sanctions to respondent based upon these violations.

Affirmed.

Judges BRYANT and GEER concur.

Report per Rule 30(e).